**GROVE, Plaintiff-Appellant, v BORCHERS, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1946. Decided December 19, 1947.

**520**

I. L. Holderman, Dayton, for plaintiff-appellant.

Mathews and Altick, Hugh H. Altick, of counsel, Dayton, for defendant-appellee.

## OPINION

By HORNBECK, J.:

The appeal is on questions of law from a judgment of the trial judge entered on a finding in behalf of the defendant.

No specific assignments of error are set out separately or in the brief, but questions are presented and argued generally. We assume that the errors assigned here are the same as set up in the motion for new trial which consisted of five branches. It is necessary to consider one assignment only, namely, that the judgment is not sustained by sufficient evidence and is contrary to law.

The action was for damages claimed to have resulted to the head and motor block of a Ford Pick-Up truck which was delivered to the defendant for repair of the radiator. The truck was permitted to stand outdoors and during the period the radiator froze, resulting in the damage to the truck and necessitating the purchase and installation of a new motor. Second cause of action was for rental of another truck to replace the Ford during the period that it was out of use.

Upon the issues joined, the only question of substance was whether or not the bailee used ordinary care in its attention to the truck after it was turned over to it as bailee for hire.

As a part of the bill of exceptions, we have the decision of the trial judge wherein he held that ordinary care did not require the defendant or its agents under the circumstances appearing to ascertain whether or not the plaintiff's truck contained any anti-freeze solution, and if not, to drain the radiator. In holding with the defendant, the court found that the fact that there was no anti-freeze solution in the radiator was not communicated to the attendant who received the car in defendant's garage. We may not disturb this finding

of fact, although it is not in accord with the testimony of Mr. Wood, who delivered the car to defendant's attendant. However, there are other facts in this record which have probative effect and which, in our judgment, indicate that the defendant did not exercise ordinary care in the attention which it gave to plaintiff's truck.

The record discloses that the truck was turned over to the defendant about seven o'clock in the morning of November 20, 1945. Manifestly, this was the period of the year when continuous cold weather would not have been expected but when occasional freezing might be anticipated. Defendant offered evidence that prior to the 20th there had been six days when the temperature was freezing or lower, at the Weather Bureau at Vandalia. On the night of the 20th of November the temperature was thirty degrees, on the 22d twenty degrees and on the 23d eighteen degrees.

It is conceded by all that the truck was left with the defendant for the purpose of repairing the radiator and this was the notation on the worksheet. The radiator on an automobile is the reservoir for the water used in the cooling system. We presume there could be some repair made on a radiator which would not have to do with leakage. However, it certainly would be suggestive of leakage where the general notation is made that the work to be done is to repair radiator. It appears that because of the war defendant was carrying on its business, in part, on the outside of its building with the result that many cars were parked in the open. This put the obligation upon the defendant of exercising care commensurate with this extra hazard. There is no showing that the plaintiff knew or had reason to believe that his truck would be left out in the open while with the defendant company for repair. Obviously, the obligation to check the water in the radiator would be the more readily suggested when a car was left because there was difficulty with the radiator than if it were placed for repair of some other mechanical part having nothing to do with the cooling system.

The record is not confined to the mere proof that the automobile was left with the defendant company to repair the radiator but it further appears that Mr. Wood, the agent of plaintiff, had talked to Mr. Ed. Borchers, in charge of service for the defendant company just the day before the truck was brought in, relative to the work to be done on the truck. Mr. Borchers admits at least two conversations with Mr. Wood and says that he was informed that plaintiff was having difficulty with the radiator and that the first proposition was

to secure a new one. Being unable to do so, it was decided to repair it. He does not deny the further statement of Mr. Wood respecting the absence of anti-freeze in the radiator.

At page six of the record, Mr. Wood, who delivered the car to Tony, whose job it was to take the truck for the defendant company, states that he told Tony that he had made arrangements with Mr. Borchers and further that it was to be repaired so that it would hold anti-freeze. At page four of the record he also testified that he talked to Mr. Borchers, afterwards developed that it was Mr. Ed. Borchers, about a week prior to November 20th; that he told him that the radiator needed to be repaired for winter driving; that Mr. Borchers said the truck could be brought in one morning and he could get it the next evening; that he again called Mr. Borchers on the 19th of November and the arrangement was made for him to bring it in the next morning at seven o'clock. He also said on cross-examination that he told Mr. Borchers that the radiator had been leaking; that they couldn't put anti-freeze in the radiator. So that, if it be granted that the specific statement of the purpose was not made to Tony, it fairly appears that it was made to the head of the Service Department which was sufficient notice to the defendant company.

After plaintiff learned that the radiator had frozen and the head and block on the motor had cracked, after telephone calls with agents of defendant, the plaintiff and Mr. Wood went out to defendant's lot and it is testified by Mr. Wood that Mr. Bernard J. Borchers, Jr., then said that on the evening of the freeze there were two cars that weren't drained and the rest were and stickers put on the windshields to the effect that the car had been drained and that the radiators on the two cars which had not been drained froze. If this is correct, it discloses a recognition on the part of the defendant of its obligation, as bailee, to take steps to make certain that radiators on the lot would not be permitted to freeze while in its possession.

Mr. Bernard J. Borchers, Jr., then General Manager of defendant company, gives his version of what was said,

"No, I didn't say that. I said our practice of draining cars was preceding a cold snap in the year, and that had been done, and that this second cold snap, in which he was caught, had also caught another car."

There is also some testimony as to the custom in accord with the answer of Mr. Borchers just quoted, namely, that they check all cars at the beginning of prospective cold

weather and make no further check from that time on. We doubt if custom is established by the questions and answers, but if so, a bailee can not contract against the exercise of ordinary care. American Automobile Insurance Company v Dayton Parking Company, No. 1953, Montgomery County, decided November 29, 1947 (50 Abs 248); Agricultural Insurance Company v Constantine 144 Oh St 275.

Upon this whole record it fairly appears that the plaintiff kept its automobile in a garage; that no temperature prior to the time that the truck was taken into the defendant company had been low enough to cause the radiator to freeze inside the garage, and in probability not low enough to cause it to freeze in the open during the day; that the radiator on the truck leaked and would not hold anti-freeze. It is commonly known that anti-freeze will get away in a cooling system when water will remain. The truck was taken to the place of business of the defendant company and left at its service door and its agent made the statement that they would take care of it. Defendant was then operating a business which required it to keep most of its cars outdoors, increasing the hazard, particularly of freezing of radiators, that this extra hazard was unknown to the plaintiff. The plaintiff had exercised ordinary care respecting the radiator in the truck. It was the obligation of the defendant under the law to exercise such care in the handling and attention to the property of the plaintiff as an ordinarily prudent man would observe in caring for his own property under like circumstances. Pennsylvania Company v Miller, 35 Oh St 541. Defendant's agent was told that the car was left to have the radiator repaired. It may be that he was specifically told that it was brought in to be repaired so that it would hold anti-freeze. In any event, the head of the Service Department was so told and also knew generally that the repair was made necessary because a new radiator could not be secured. It is probable that the mere notation on the worksheet, "radiator to be repaired", was notice in itself that it would not satisfactorily hold water and certainly would not hold anti-freeze.

Upon the whole record it is our judgment that to hold under the facts that it was not shown that defendant-bailee failed to exercise ordinary care in the attention given to the radiator on plaintiff's truck is against the manifest weight of the evidence.

The judgment will be reversed and cause remanded for new trial.

WISEMAN, PJ, and MILLER, J, concur.

# 524

## APPLICATION FOR REHEARING.

Decided January 9, 1948.

### OPINION

By THE COURT:

Submitted on application of appellee for rehearing. It is urged that we made no finding that the appellant was not chargeable with contributory negligence.

Bailment arises out of contract under which it was the obligation of the defendant to exercise ordinary care, as bailee for hire, in the attention given to the automobile of plaintiff-appellant. We held that the evidence did not support a finding and judgment that he had observed that obligation.

Since releasing our original opinon, we have found a case which treats of the duty of a bailee for hire to drain water from the radiator in an automobile in freezing weather and the application of a contrary custom to this obligation. Simms v Sullivan, d. b. a. Fashion Garage, (Ore.) 198 Pac. 240, 15 A. L. R. 678. The pertinent part of the opinion is annotated at page 693 of 15 A. L. R.

The application will be denied.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.